SMITH-COURTNEY COMPANY v. BOARD OF ROAD COMMISSIONERS OF HERTFORD COUNTY AND J. M. ELY ET AL., CONSTITUTING THE SAID BOARD.

(Filed 5 October, 1921.)

**Parties—Courts—Pleadings—Constitutional Law—Contracts.**

> Where a township road district has been reincorporated by statute, and included in a newly formed county road district, with a decrease in the taxes formerly allowed to be levied to such an extent as to be insufficient to meet the contract obligations already incurred by the former district to several creditors, and one of them seeks by mandamus to compel the collection of the taxes formerly authorized to be levied by the township district, the same to be applied to the payment of his debt alone, and not to be pro rated among them all: *Semble,* the effect of the later act was to impair the obligation of a contract, prohibited by section 10, clause 1, Article I, of the Constitution of the United States; but the case will be

remanded for making all like creditors parties, so that they may be bound by the final judgment, as they are interested therein, and with such amendments to the pleadings as the trial judge may deem proper to be allowed.

CLARK, C. J., by opinion, concurring in result.

APPEAL by defendants from *Calvert, J.,* August Term, 1921, of HERTFORD.

*Lloyd J. Lawrence for plaintiff.*
*W. D. Boone for defendants.*

WALKER, J. This action was brought to compel the defendants, by a writ of mandamus, to levy the necessary tax to pay a debt to plaintiff of four hundred dollars, contracted and due .by the former board of road supervisors of Murfreesboro Township for machinery, tools and equipment to be used, and which were used, by the board in the construction and improvement of the public roads of the said township, the board of road supervisors being authorized by statute (Public Laws of 1913, ch. 562) to contract the debt so due to the plaintiff. It is alleged in the case, and appears therefrom to be the fact, that there are claims of other parties due to them and contracted for the same purpose as was the claim of the plaintiff, the total of all the claims amounting to $11,000 or about that amount. It is further alleged that at the time of contracting the said debts the statute permitted a levy of taxes at the rate of fifty cents on $100 worth of property, and $1.50 on the poll, the original rate being thirty cents on the $100 worth of property and ninety cents on the poll, which by the Laws of 1919 was increased to fifty cents on the $100 worth of property and $1.50 on the poll, so that at the time the debt of plaintiff and those debts of the other creditors similarly situated were contracted, the limitation to the levy of taxes for the payment of the same was as above set forth, that is, fifty cents on the $100 worth of property and $1.50 on the poll. By an act passed 3 March, 1921, the Legislature abolished the township system for constructing and improving the roads of the county, and substituted the county system, thereby forming one entire unit of the county, and placing the control and supervision of the public roads in a county road commission, and fixed the tax limit for road purposes (construction and maintenance) at twenty-five cents on the $100 worth of property and seventy-five cents on the poll; and by section 26 of said act the Legislature authorized a special and additional tax not exceeding ten cents on the $100 worth of property and thirty cents on the poll in Murfreesboro Township to discharge the existing indebtedness.

The plaintiff contends that this reduction of the rate of taxation, from fifty cents on the $100 worth of property and $1.50 on the poll, to twenty-five cents on the $100 worth of property and seventy-five cents on the poll, and of the special tax to ten cents on the $100 worth of property and thirty cents on the poll, impairs the obligation of the contract made with the township prior to the date of the reduction, and is, therefore, in violation of the Constitution of the United States forbidding the passage of a law by any of the States impairing the obligation of a contract (U. S. Const., Art. I, sec. 10, cl. 1); that as the later statutes withdraw the means of fully enforcing the payment of the debt due to the plaintiff, it follows that the obligation to pay all of the debt, or to fully perform the contract in that respect, is impaired, at least, to that extent. While we will not enter upon a full or elaborate discussion of the constitutional question raised here, but leave it for the hearing on the merits if the case comes back to us, we may refer, at this time, to a few of the many cases decided by the Federal Supreme Court, which is the one of last resort upon this phase of the matter in controversy. It has been held by that Court that a legislature may, at any time, restrict or revoke at its pleasure any of the powers of a municipal corporation, including, among others, that of taxation, provided its action in that respect shall not operate directly upon the contracts of the corporation, so as to impair their obligation by abrogating or lessening the means of their enforcement. Legislation producing this latter result directly by operating upon those means, is prohibited by the Constitution, and must be disregarded. The prohibition of the Constitution against the passage of laws impairing the obligation of contracts applies to the contracts of the State, and to those of its agents acting under its authority, as well as to contracts between individuals. The courts. treating as void the legislation abrogating or restricting the power of taxation delegated to a municipality, upon the faith of which contracts were made with it, and upon the continuance of which alone they can be enforced, can proceed and by mandamus compel, at the instance of parties interested, the exercise of that power, as if no such legislation had ever been attempted. The Louisiana Act of March 6, 1876, was held to be invalid so far as it limited the power which the city of New Orleans possessed, when the bonds were issued upon which the judgment in that action was recovered, to levy a tax for their payment. *In re Wolff v. Mayor,* etc., of New Orleans, 13 Otto (103 U. S.), 358 (26 L. Ed., 395). Where a municipal corporation is dissolved and a new corporation is created, composed of substantially the same community, including substantially the same taxable property, within reduced territorial limits organized for the same general purposes and holding by transfer, without consideration, the public property of the former, it is

the successor of the old corporation and is liable for its debts. The obligations of municipal corporations, upon bonds duly issued by them, are secured by all the guarantees which protect the engagements of private individuals. Any legislative enactment which withdraws or limits the remedies for the enforcement of obligations assumed by a municipal corporation, where no substantial equivalent is provided, is forbidden by the Constitution of the United States. *Port of Mobile v. Watson,* S. C. Rep. Ed. (116 U. S.), 289 (29 L. Ed., 620). Disincorporation of a municipality by legal proceedings does not void its legally subsisting contracts, but on the reincorporation of the same inhabitants, and of a territory including street improvements for which bonds were given, the obligation to pay them devolves upon the new corporation. A statute making a vote of taxpaying voters necessary to the assumption of a new municipality of a debt of its predecessor, which has been abolished, is an unconstitutional attempt to impair the obligation of the contract, if liability existed without such vote before the statute. *Shapleigh v. San Angelo,* 167 U. S., 646 (42 L. Ed., 310). Mandamus to compel the county authorities through whom taxes are assessed and collected to levy a tax to pay a judgment on township bonds cannot be denied on the theory that, because the Legislature of the State might, under its constitution, have vested in the township authorities the power to assess and collect taxes for corporate purposes, it could not vest such power in county officers. The exercise by a State of its right to alter or destroy its municipal corporations is ineffectual to impair the obligation of municipal contracts. County auditors and treasurers, who are the instruments employed by the State Legislature to assess and collect taxes, may be compelled by mandamus to levy a tax to pay a judgment on township bonds, although the corporate existence of the township has been abolished by the State Constitution, and its corporate agents removed. Mandamus to compel both county auditors and county treasurers to levy a tax to pay a judgment on township bonds is not a suit against the State, within the inhibition of the Federal Constitution, because such officers have been forbidden by the State Legislature to exercise any such power. *Graham v. Folsom,* 220 U. S., 248 (50 L. Ed., 464). The levy and collection of taxes by the city of New Orleans to satisfy outstanding indebtedness of the metropolitan police board, contracted on the faith of the exercise of the taxing power for its payment, do not exhaust the city's power in the premises, where the city has applied the taxes to other purposes, and has failed to turn them over, upon demand, to the board or its representative. The receiver of the metropolitan police board in the State of Louisiana, as representative of the interested creditors, is unconstitutionally deprived of the right of taxation by the city of New Orleans for the pay-

ment of their claims, which right existed before the enactment of Louisiana Acts 1870, No. 5, by the provisions of that act under which the payment of the judgment recovered by such receiver against the city upon outstanding indebtedness of the board, contracted on the faith of the exercise of the city's power to levy taxes for its payment, may be indefinitely postponed until such time as the city is ready and willing to make such payment. *State of Louisiana v. Mayor,* 215 U. S., 170 (54 L. Ed., 144).

The cases above cited will show the varying phases in which this question as to the impairment of the obligation of contracts has been presented, and will be of service in the further consideration of this case. The merger of an existing municipal corporation, owing debts, in another, or the abolishment of a municipal corporation owing debts and the legal effect upon its existing contracts, was presented and decided in *Broadfoot v. Fayetteville,* 124 N. C., 478; *U. S. v. Memphis,* 97 U. S., 284; *Mt. Pleasant v. Buckwith,* 100 U. S., 514. The debts of a municipal corporation are not extinguished by a repeal of its charter as is demonstrated by *Broadfoot's case, supra,* and the several cases cited therein, among which we especially refer to *Merriweather v. Garrett,* 102 U. S., 472; *O'Connor v. Memphis,* 6 Lea, 730; *Wolf v. New Orleans, supra; Mobile v. Watson, supra; Amy v. Selma,* 77 Ala., 103. It was said in *Port of Mobile v. Watson, supra,* that "the remedies for the enforcement of such obligations assumed by a municipal corporation, which existed when the contract was made, must be left unimpaired by the Legislature, or if they are changed a substantial equivalent must be provided. Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law which withdraws or limits the taxing power and leaves no adequate means for the payment of the bonds is forbidden by the Constitution of the United States, and is null and void." *Von Hoffman v. Quincy,* 4 Wallace (71 U. S.), 535; *Edwards v. Kearzey,* 96 U. S., 595; *Ralls County Court v. U. S.,* and *Louisiana v. Pilsbury,* 105 U. S., 733, 278 (26 L. Ed., 1220, 1090); *Louisiana v. Mayor,* 109 U. S., 285 (28 L. Ed., 936); *Comrs. v. Rather,* 48 Ala., 433; *Edwards v. Williamson,* 70 Ala., 145, and *Slaughter v. Mobile County,* 73 Ala., 134.

The proposition we have somewhat discussed receives strong support and striking illustration in *Edwards v. Kearzey, supra,* which went to the United States Supreme Court from this Court, and in which our homestead exemptions were held to be of no avail against the full recovery of preëxisting debts, because they substantially withdrew from a creditor his right, and remedy, to have his contract with the debtor enforced, or placed an obstacle in the way of its proper enforcement,

thereby impairing its obligation. It would seem, therefore, that the later statutes reducing the limit of taxation as it existed when this contract was made impaired its obligation; and, so far as they did so, were invalid, but we will not finally and conclusively decide this question until all intersted parties are before us.

We hold that this controversy cannot be finally and fully decided and settled without the presence of the other creditors for several reasons, and among them one is, that the sole plaintiff here is claiming that he is entitled to the full amount of his claim and not merely to a pro rata part of the tax to be levied, as provided by one of the statutes cited above, for the payment of all similar debts of Murfreesboro Township.

It was stated in the argument here that it would take five or six years to pay the existing debts if levies could only be made under the provisions of the last two statutes, which would amount to a stay law, and would impair the obligation of the contract. *Jacobs v. Smallwood,* 63 N. C., 113.

We would be deciding the case by piecemeal should we dispose of it without hearing from the other creditors, or taking such action and proceedings beforehand as would make the judgment binding upon them. We, therefore, remand the case to the end that the other creditors similarly concerned may come in voluntarily, or be brought in so that they may plead and be concluded by whatever judgment is finally rendered, and it will be so certified. The judge may order an amendment of the pleadings, or a repleader, as he may deem necessary, in order to protect the rights of all parties, and to afford all parties ample opportunity to be heard upon the issues involved.

We will not now consider the question concerning the poll tax and its application to special purposes, as it does not necessarily arise in this appeal. The property tax, it is conceded, has been substantially reduced from what it was when the debts due the plaintiff and others were contracted, and this is sufficient to show that the obligation in each of those contracts was impaired, as the means of enforcing them have been denied, or rather diminished, sufficiently to seriously prejudice the rights of those creditors.

Remanded with instructions.

CLARK, C. J., concurring in result: The statute sought to be enforced, ch. 347, Public-Local Laws 1921, entitled "An act to appoint road commissioners for Hertford County," under which the plaintiff asks a mandamus to levy this tax, specifies that its sole purpose is the construction and maintenance of the roads, and for that purpose authorizes a levy of 25 cents on the $100 worth of property, and 75 cents on the poll, and section 26 of said act further authorizes a special and additional

tax, not exceeding 10 cents on the $100 worth of property and 30 cents on the poll in Murfreesboro Township, to discharge the existing indebtedness for roads in that township. The opinion recognizes the validity of this legislation upon general principles, from which I do not dissent, but it is proper to note, however, that so much of this statute which authorizes the levy of a tax on the poll "for road purposes" is invalid because in violation of an explicit provision in the State Constitution, which, as adopted in 1868, provides, Article V, section 2: "The proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor, but in no one year shall more than 25 per cent thereof be appropriated to the latter purpose."

This provision of the Constitution remains unaltered. When there has been a levy for general purposes the validity of the poll tax has not always been brought in question, because, presumably, when collected the proceeds of the poll tax would be applied to the constitutional purposes to which it is restricted, *i. e.,* education and the poor. But this particular act is restricted to a specific purpose, therein expressed, that the tax is to be levied for the construction and maintenance of roads. So much of the act as levies a poll tax for such purposes is therefore unconstitutional and invalid. This, however, can be struck from the act without impairing the validity of the property tax. This course has been pursued in several cases.

As we have now declared a legislative policy of incurring an indebtedness of $50,000,000 for the construction and maintenance of roads, it is well to note that however laudable such purpose may be, the Legislature is forbidden by the Constitution to derive any funds for that purpose from the levy of a poll tax.

It is true that at common law, at a time when there was a monopoly of land ownership by the barons in England, there was inaugurated a system by which those who had no wheels or produce to require the use of roads were conscripted without pay to render labor to make the roads for those who had need to use them. When our Convention met in 1868, while we did not abolish the poll tax entirely, as nearly all the other States have done, we did restrict the State and county capitation tax to $2, and inserted as a further and just protection that the proceeds of the poll tax should be applied to the purposes of education and the support of the poor.

The question now presented, under the Constitution as now amended, whether if a mandamus issue to enforce collection of taxes under this statute, it shall embrace an order to collect a capitation tax for that purpose, has never heretofore been before this Court in any case.

Under the Constitution as it stood before the amendment ratified in November, 1920, there was a requirement that "the State and county capitation tax should never exceed $2," but there was also a provision that the "State and county capitation tax shall be equal to a tax on property, valued at $300 in cash." By reason of this requirement of an equation between the capitation tax and the property tax on $300 there were conflicting decisions whether when the tax on property exceeded that limitation the tax on the poll should also exceed it, and there were also conflicting decisions whether when there was such excess the tax on the poll could be applied for the benefit of bondholders and other purposes, or was restricted to "education and the support of the poor." In an unanimous opinion by *Judge Connor, R. R. v. Comrs.,* 148 N. C., 220, and *Perry v. Comrs., ib.,* 522 (*Hoke, J.*), it was held that the poll tax "could never exceed $2 on the head," and must be applied to "education and the support of the poor." And there were other cases to the same effect. On the other hand, in *Moose v. Comrs.,* 172 N. C., 419, it was held by a divided Court (*Clark, C. J.,* and *Walker, J.,* dissenting) that the limitation of $2 applies only where the levy is for the ordinary expenses of the State and county government, and only under such levy was the restriction to be observed that the poll tax should be applied only to "education and the support of the poor."

We also had decisions that inasmuch as the restriction to $2 on the poll, in its terms, applied only to the "State and county capitation tax," that cities and towns were under no such limitation, and instances were frequent where the total tax levied upon a laboring man who had nothing to be taxed except his head often amounted in the aggregate to $9 or $10.

These conflicting decisions have ceased to have any bearing because under the Constitution as now amended the "equation of taxation" between the poll and property has been stricken out, and the Constitution, Article V, section 1, now reads: "The General Assembly may levy a capitation tax on every male inhabitant of the State over 21 and under 50 years of age, which tax shall not exceed $2, and cities and towns may levy a capitation tax which shall not exceed $1. *No other capitation tax shall be levied.*" Section 2 of that article of the Constitution which provides that "the proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor" remains unaltered.

It will therefore be seen that there is no equation of taxation under any construction of which the poll tax can now ever exceed $2 for State and county, or be applied to other purposes than for education and the support of the poor, nor can the cities and towns levy more than $1 as a capitation tax. The language of the Constitution is now made plain, *"No other capitation tax shall be levied."* There is no equation of

taxation to authorize a judicial construction to the contrary. It is also clear from this language that no capitation tax can be levied upon women, or upon men except between 21 and 50 years of age.

It follows that the mandamus, if it shall issue in this case, cannot require the levy of any capitation tax for the maintenance and construction of roads. So much of the statute as provides therefor must be disregarded and stricken out. The valid portion of the statute which authorizes the levy of a property tax for that purpose is not affected by the invalid requirement of a poll tax.

In England, from which we derive so much of our legislation, a poll tax was twice levied for short periods over 500 years ago, and then it caused what was known as the "Jack Cade," and also the "Watt Tyler" rebellions. It was each time promptly repealed, and has never been collected since except for 2 or 3 years in the reign of William III., more than 200 years ago, when, again, it was very promptly repealed.

The poll tax was not mentioned in the Constitution made at Halifax in 1776. In the Revised Statutes of 1835, the poll tax was 20 cents which was levied also on slaves, who were not taxed *ad valorem.* In the Revised Code of 1854 the poll tax was 40 cents, and it is current history that it was levied largely because slaves were not taxed according to their value as property.

The Constitution of 1868, in view of this steady growth of the poll tax in amount, placed a limit by providing: "The State and county capitation tax combined shall never exceed $2 on the head," and added a just provision that its proceeds should be applied to "education and the support of the poor." In *Judge Connor's* well considered opinion, *R. R. v. Comrs.,* 148 N. C., 220, 248, he emphasized these provisions, and adds: "This question can never arise again." It did, however, arise again, and a contrary view was taken by a majority of the Court in *Moose v. Comrs., supra.* The question is now settled, as already stated, by the amendment which, striking out the equation of taxation, restricts the amount of the capitation tax absolutely, and adds: "No other capitation tax shall be levied."

In *R. R. v. Comrs.,* 148 N. C., 253, it is said that our poll tax "is criticized by Hollander on State Taxation, 104, who points out that in this State 60 per cent of the taxes are paid by persons owning less than $500, with the result that the small taxpayer, if he pay the poll tax also, pays nearly double the rate of the larger taxpayers."

It was doubtless considerations such as these that procured the adoption of the amendment by which the equation of taxation was stricken out, and the total capitation tax, including that by municipalities, was restricted to $3 total, with the unequivocal declaration that "no other

capitation tax shall be levied" and retaining, unaltered at the same time, in the Constitution the provision that "the poll tax shall be applied to education and the support of the poor."

It is not without significance that simultaneously with the adoption of the policy of appropriating $50,000,000 for roads there should be this constitutional protection extended to the "man with the hoe"—sometimes called "the forgotten man," for the same Legislature (1921) took notice of the constitutional provision authorizing the exemption of personal property "to a value not exceeding $300," and by ch. 38, sec. 72, p. 270 (6), enacted the exemption of that amount for the first time, though the authority had been in the Constitution for more than 50 years.

We must take notice of the evident intent of the Constitutional amendment and of the Legislature that no part of the appropriation for roads or any other purpose than "education and the support of the poor," shall be raised out of a capitation tax, which, besides, is absolutely limited in amount—even for education and the support of the poor—if levied by the State and county, to $2, and to a levy of $1 by municipalities.