14903

KIRK v. DOUGLASS, SHERIFF

(3 S. E. (2d), 536)

*Messrs. Samuel Want, Sam Rogol* and *James Verner,* for appellant,

*Messrs. George K. Laney, James E. Leppard* and *C. L. Hunley,* for respondent,

June 16, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This suit in equity was brought by the plaintiff, as the owner and holder of certain serial bonds of the face value of six thousand dollars, issued by Chesterfield County on April 1, 1936, on behalf of himself and on behalf of all other owners of the same issue of bonds who may come into the cause and contribute to the prosecution of the action. The

plaintiff prays for an order directing the defendant, F. S. Douglass, as sheriff of Chesterfield County, to proceed with the enforcement of tax executions in his hands, in accordance with the provisions of the general laws of the State of South Carolina, and that the alleged special law approved May 9, 1938, known as Act No. 937 (Acts 1938, page 1872), providing for the collection of delinquent taxes in Chesterfield County in five equal, successive annual installments, commencing January 1, 1939, be declared unconstitutional. A demurrer to the complaint was sustained by a former order and judgment entered for the defendant, from which the plaintiff has appealed. The correctness of the ruling sustaining the demurrer can be determined only by examining the allegations of the complaint.

The complaint alleges, among other things, that the appellant purchased the bonds in question (a portion of an issue of $520,000.00 known as "Refunding Bonds," upon the covenant of Chesterfield County that payment of the principal and interest would be provided for by the levy and assessments each year of a tax sufficient to cover the same; that it was represented that the assets of the county to support the said issue of bonds included over $700,000.00 in delinquent taxes; that in the county supply bill for the year 1938, provision for the payment of interest on the series of bonds, of which the appellant owns a part, was made by the appropriation of a specified amount to be derived out of delinquent tax collections, and that a specific tax levy was imposed in a millage sufficient, with the appropriation of delinquent tax collections, to cover the requirements for debt service; that accordingly, in order that the interest on the bonds in question might be provided for, it was essential that the delinquent tax collections and the specific tax levy both be available; that the April 1, 1938, coupons on the appellant's bonds were not paid when the same fell due because of lack of funds, although they were later paid, but without any compensation for the delay; that by reason of

the matters further set forth in the complaint the county will not have the funds with which to pay the October 1, 1938, coupons when the same mature.

The complaint then charges that the Legislature enacted a law (Acts 1938, page 1872) providing for the collection of delinquent taxes in Chesterfield County in five equal, successive, annual installments, commencing January 1, 1939, thereby in effect prohibiting the sheriff of Chesterfield County from collecting delinquent taxes during the year 1938, or prior to January 1, 1939, under the general law; and it is alleged that the respondent sheriff has given obedience to said statute, and has failed and refused to enforce payment of delinquent tax executions, and will continue to refrain from enforcing them.

It is further alleged "that in the appropriation bill for Chesterfield County for the year 1938, the amount necessary to pay the principal and interest on the above described issue of bonds is stated to be Twenty Five Thousand Five Hundred ($25,500.00) Dollars, and the total amount necessary to pay all of the principal and interest of the bonded indebtedness of the county which will accrue during the year 1938 is stated to be Sixty Two Thousand One Hundred ($62,100.00) Dollars; that to pay said amount of Sixty Two Thousand One Hundred ($62,100.00) Dollars, Forty Thousand ($40,000.00) Dollars is appropriated out of monies to be collected from delinquent taxes during the fiscal year beginning July 1st, 1938; that, however, by reason of the enactment of the aforementioned statute no such amount of delinquent taxes can be reasonably expected to be collected, since by said statute delinquent taxpayers are specifically advised that they are not required to pay any delinquent taxes prior to January 1st, 1939, and that no penalty will accrue if they delay payment until then, and that at such time they will be enabled to divide their delinquent tax obligations into five annual payments; and the plaintiff is informed and believes that it clearly appears from the

records of the sheriff of Chesterfield County that except under pressure by the sheriff within the provisions of the general law of the state relating to the collection of delinquent taxes, no substantial amount thereof can be or will be collected by him prior to January 1st, 1939."

It is charged in the complaint that the aforesaid Act is unconstitutional, in that it is a special law applying only to Chesterfield County in a case already covered by the general laws of the State. And it is further charged that the Act violates the provisions of the Constitution of the United States and the Constitution of South Carolina (U. S. Constitution, Sec. 10, Art. I, U. S. C. A.; S. C. Constitution, 1895, Sec. 8, Art. 1), in that it impairs a contractual obligation of Chesterfield County to the appellant and other bondholders in respect to the security and provisions for the payment of the bonds.·

It is alleged that the appellant has no adequate remedy at law, and the complaint prays for general relief, and for the costs of the action.

At the time of the issuance and sale of the bonds in question on April 1, 1936, as shown by the complaint, the general laws of the State of South Carolina required the sheriff of Chesterfield County to collect delinquent taxes by the levy of executions therefor, which executions were required to be turned over to the sheriff by the treasurer of the county on April 15th following the close of the calendar year for which said taxes were assessed and levied, and to sell the property upon which the taxes were so assessed and levied, in the event that such tax executions were not paid.

It is provided in Section 10, Article I. of the Constitution of the United States, that no state shall pass any law "impairing the Obligation of Contracts," and in Section 8, Article I of the Constitution of this State, that the Legislature shall not pass any "law impairing the obligation of contracts." The language of the two Constitutions in this respect is identical. Any law which impairs

the obligation of a contract is prohibited. The question, however, as to whether or not a law impairs the obligation of a particular contract in not always of easy solution. The provisions of the Constitutions quoted have given rise to prolific litigation, and in its varied applications has been the subject of more discussion in the Courts of the United States than perhaps any other constitutional provision. Obviously, the obligation of a contract includes no element more important than the means of enforcement. "This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those 'imperfect obligations,' as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest." *Edwards v. Kearzey,* 96 U. S., 595, 600, 24 L. Ed., 793.

Appellant, challenging the constitutionality of the Act of 1938, to which we have referred relies upon the general principle that all the laws of the State existing at the time a contract is made which affect the rights of the parties, enter into and become a part of it, and are as obligatory on all Courts which assume to give a remedy on such contracts as if they were referred to or incorporated therein. *Martin et al. v. Saye et al.,* 147 S. C., 433, 145 S. E., 186; *Von Hoffman v. City of Quincy,* 4 Wall., 535, 550, 18 L. Ed., 403; *Brine v. Ins. Co.,* 96 U. S., 627, 24 L. Ed., 858.

Appellant further asserts the applicability of the general rule that the laws relating to the rights of enforcement existing at the time of the issuance of municipal bonds on the authority under which they are issued, enter into and become a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired or its fulfillment hampered or obstructed by a change in the law; and further, if there is a change in the law, the bondholder must be protected in his rights under his contract to have taxes collected in as prompt and efficious a manner as provided at the time the contract was executed. *Seibert v. Lewis,* 122 U. S., 284, 7 S. Ct., 1190, 30 L. Ed., 1161; *Loui-*

*siana ex rel., Hubert v. New Orleans,* 215 U. S., 170, 30 S. Ct., 40, 54 L. Ed., 144, 12 Am. Jur., Sect. 418, page 50; *Martin et al. v. Saye et al., supra; Mobile v. Watson,* 116 U. S., 289, 6 S. Ct., 398, 29 L. Ed., 620; *Broadfoot v. Fayetteville,* 124 N. C., 478, 32 S. E., 804, 70 Am. St. Rep., 610; *McGahey v. Virginia,* 135 U. S., 662, 10 S. Ct., 972, 34 L. Ed., 304; *Welsh v. Cross,* 146 Cal., 621, 81 P., 229, 106 Am. St. Rep., 63, 2 Ann. Cas., 796.

The respondent insists that the constitutional protection of the obligation of contracts is necessary subject to the police power of the State, and therefore a statute passed in the legitimate exercise of the police power will be upheld by the Courts, although it incidentally affects existing contract rights; that in recent years strict construction of the impairment clause has been eased, and Courts have adopted a tendency to construe it more liberally. The prohibition is said not to be an absolute one, and is not to be read with literal exactness, like a mathematical formula; it prohibits unreasonable impairment only. This argument has reference to the statutes passed in recent years by several of the states in recognition of the existence of a public emergency affecting wide economic interests involving the public welfare, and to the decisions of the United States Supreme Court and of several of the states upholding such legislation. *Home Bldg. & L. Ass'n v. Blaisdell,* 290 U. S., 398, 54 S. Ct., 231, 78 L. Ed., 413, 88 A. L. R., 1481 (affirming 189 Minn. 422, 249 N. W., 334, 86 A. L. R., 1507); *In re Title & Mortgage Guarantee Co.,* 264 N. Y., 69, 190 N. E., 153, 96 A. L. R., 297; *People ex rel. Durham Realty Corp. v. La Fetra,* 230 N. Y., 429, 130 N. E., 601, 16 A. L. R., 152

While we have undertaken to state in substance the contentions of the parties on this phase of the case, that is, the constitutionality of the alleged special Act of 1938 in its bearing and alleged effect upon the question of the impairment of the obligation of the contract, we are of the opinion that the sole question before the Court at this time is

whether or not the complaint upon its face states a cause of action for equitable relief.

Before a law can be assailed by any person on the ground that it is unconstitutional, he must show that he has an interest in the question, in that the enforcement of the law would be an infringement on his rights. The corollary of the general rule is that one who is not prejudiced by the enforcement of an Act of the Legislature, cannot question its constitutionality. These principles are generally recognized. 11 Am. Jur., Sec. 111, p. 748.

The facts alleged in the complaint are not proven, of course. They are admitted by the demurrer only for the purpose of passing upon their sufficiency in law. Such admissions are not evidence, nor do they dispense with proof upon a trial on the merits. *Powell et al. v. Adams et al.,* 131 S. C., 48, 126 S. E., 435; *Ophuls & Hill v. Carolina Ice & Fuel Co.,* 160 S. C., 441, 158 S. E., 824. When a demurrer is overruled the facts alleged in the pleading must be proved and may be controverted as if no demurrer had been filed.

Our conclusion is, from a careful examination of the complaint, that it does set forth a cause of action. It would be tantamount to a denial of justice to dismiss the plaintiff's suit without giving him a hearing on the merits. We do not have before us the truth or the untruth of the charges made by the complaint. The allegations of fact that are well pleaded are admitted for the purpose of testing the question whether the complaint states a cause of action. Whether proof will or can be made, substantiating the allegations, is not before us. If upon a hearing on the merits the plaintiff can establish that his constitutional rights have been violated and the contract obligation impaired, the time will then be ripe to pass upon the question of the constitutionality of the Act of 1938 which provides for the payment of delinquent taxes in Chesterfield County in successive, annual installments.

504

If on trial the plaintiff should fail to prove that his contract rights have been impaired, then there would be no occasion for the Court to say whether the Act is constitutional or unconstitutional, because if he has not been prejudiced by the enforcement of the Act he cannot question its validity. Certainly it would not be proper for this Court, in the absence of a hearing upon the merits, to pass upon the constitutionality of the Act. The plaintiff has sufficient interest, as shown by his allegations, to maintain the suit, but it is not a case which the Court should determine on the pleadings, in the absence of testimony.

For the reasons assigned, the judgment of the Circuit Court is reversed, and the demurrer is overruled. The case is remanded, and the defendant is granted twenty days within which to answer, after the filing of the remittitur.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE PHILIP H. STOLL concur.

MR. JUSTICE CARTER did not participate on account of illness.