[Civ. No. 18867. Third Dist. May 22, 1980.]

COUNTY OF SHASTA et al., Plaintiffs and Respondents, v.
COUNTY OF TRINITY et al., Defendants and Appellants.

COUNSEL

Ronald Barbatoe, District Attorney, for Defendants and Appellants.

John S. Kenny, County Counsel, David R. Frank, L. Alan Swanson, Deputy County Counsel, and Reese & Halkides for Plaintiffs and Respondents.

OPINION

DeCRISTOFORO, J.*—The dispute involved in this appeal arose in the wake of the adoption of Proposition 13 (the Jarvis-Gann initiative) in the June 1978 primary election. The measure adds article XIII A to the California Constitution and imposes limitations upon the assessment and taxing powers of state and local governments. Appellants, Trinity County et al. (referred to hereinafter collectively as Trinity County), have refused to pay Trinity County's share of payments due from the Shasta-Tehama-Trinity Joint Community College District to the Shasta Joint Junior College District, arguing that article XIII A precludes them from doing so.

Respondents Shasta County et al. (referred to hereinafter collectively as Shasta County), filed a petition for writ of mandate directing Trinity County to make payment of its share of the 1978-1979 payments, approximately $44,000. The matter was transferred from the Shasta County Superior Court to the Siskiyou County Superior Court which court granted the petition and directed Trinity County to levy an ad valorem real property tax for the 1978-1979 fiscal year in an amount sufficient to meet its share of the payments, and to pay that sum to the district. Trinity County appeals, contending that the annual payments

_____
*Assigned by the Chairperson of the Judicial Council.

are not bonded indebtedness and are thus not the type of payment which article XIII A, section 1, subdivision (b) excepts from the operation of the taxing limitations of that article. For reasons which will be explained below, we disagree and affirm the judgment in its entirety.

FACTS

In the June 2, 1964, election, the voters of the Shasta Joint Junior College District of Shasta, Lassen and Modoc Counties authorized the incurring of a bonded indebtedness in the amount of $8.5 million for purposes related to the purchase, construction, repair and improvement of junior college physical facilities. In 1966 a reorganization was proposed to include Trinity and Tehama Counties. At a meeting of the Trinity County School District Organization Committee, Dr. Gil Collyer of the Shasta Joint Junior College District, presented two options. The first was that an entirely new district be formed to absorb the then existing Shasta Joint Junior College District, and Tehama and Trinity Counties. The second option was that the new areas simply be attached to the then existing Shasta Joint Junior College District. The first option was recommended because it would simply require a majority vote by the whole district, while under the second option there would be two measures required, one to join the district, and the second to assume the then existing bonded indebtedness which would have to be passed by a two-thirds majority, and only one district could defeat the whole proposal.

Education Code section 3347, in effect at the time the reorganization was proposed, provided that upon reorganization or unification of school districts the new district would be required to pay to the old district an annual charge for the use of the school property of the old district, equal in amount to the annual amount required for the interest and redemption of the bonded indebtedness which the old district had incurred to acquire or construct the school property. That section further provided: "The county board of supervisors shall include in the annual tax to be levied upon the assessed valuation of the unified district a tax sufficient to provide for the annual charge.... While the annual charge is in effect, the board of supervisors need not levy a tax on the assessed valuation of the included district for its interest and bond redemption if the amount of the annual charge upon the unified district is sufficient for and is actually used for the interest and bond redemption." Upon redemption of the indebtedness the annual charge ceases to accrue and property of the old district becomes the property of

the new district. Dr. Collyer explained the effect of this section to the Trinity County School District Organization Committee. The meeting also discussed the representation on the new district board of trustees and the necessity to keep the voters fully aware of the situation.

In October 1966, members of the Shasta County Committee on School District Organization met and approved a final recommendation in accordance with the first option presented to the Trinity County School District Organization Committee. This recommendation specifically included the requirement of Education Code section 3347 that the new district pay a yearly charge to the old district for the use of the old district's property, in an amount equal to the amount necessary for the interest and redemption of the old district's bonds. Thereafter the Trinity County School District Organization Committee unanimously approved the final recommendation. The issue was placed on the April 18, 1967 election ballot and Trinity County approved the proposal by a vote of 1357-yes, and 362-no, creating what is now known as the Shasta-Tehama-Trinity Joint Community College District.

Since the amendment of the California Constitution by the addition of article XIII A (Prop. 13), Trinity County has refused to levy a tax or to pay its share of the annual charge for the use of the property of the former Shasta Joint Junior College District. Trinity County argues that since it did not assume the indebtedness of the bond issue at the time of the reorganization, it is not liable for such indebtedness, and thus article XIII A precludes it from levying the tax to pay such charge.

## DISCUSSION

We first consider the effect of former article XI, section 18 of the California Constitution, in effect at the time of the 1967 election.[1] That section provided that no municipality or district may incur an indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue for such year, without a two-thirds vote of the qualified electors. ■ The purpose of that provision is to safeguard the general funds and property of a municipality from a situation in

---

[1]The substance of article XI, section 18 remains within the California Constitution, although the citation of that provision has been changed. In 1970 article XI, section 18 was repealed and article XIII, section 40 was enacted. In 1974 article XIII, section 40 was repealed and article XVI, section 18 was enacted. Although those sections are modified versions of one another, the substantive provisions of former article XI, section 18 with which we are concerned have remained constant.

which the holders of an issue of bonds could, at some time after the issuance thereof, force an unconsented-to increase in taxes, or foreclose on the general assets and property of the issuing corporation. (*City of Redondo Beach* v. *Taxpayers, Property Owners, etc., City of Redondo Beach* (1960) 54 Cal.2d 126, 131 [5 Cal.Rptr. 10, 352 P.2d 170].) In accordance with those constitutional requirements, the provisions of the Education Code in effect at the time of the 1967 election provided two methods by which reorganization or unification of school districts could be accomplished. (Former Ed. Code, §§ 3291-3306.) Under one method the voters could elect to join the new district and by separate ballot, with two-thirds required for approval, they could assume the bonded indebtedness of the old district. (Former Ed. Code, §§ 3300-3306.) Alternatively, the voters could merely elect, by a majority vote, to join the new district without assumption of bonded indebtedness and would then incur the annual charge. (Former Ed. Code, §§ 3300-3306.) As noted above, it was by the second method that the voters of Trinity County joined the now Shasta-Tehama-Trinity Joint Community College District.

■   The legislative power over school districts is plenary and upon the reorganization or unification of districts the Legislature may make provision for the division of property and apportionment of the debts of the old district. (*Pass School Dist.* v. *Hollywood Dist.* (1909) 156 Cal. 416, 418-419 [105 P. 122].) While in the absence of legislative direction the common law rule obtains, leaving the property where it is found and the debt upon the original debtor (*ibid.*) at the time of the formation of the Shasta-Tehama-Trinity Joint Community College District, legislative provision for the division of property and apportionment of debt of the old district did exist. The old district remained the owner of the property and responsible for the debt, and the new district was entitled to use that property in return for payment of an annual charge equal to the amount necessary for the interest and redemption of the bonds issued by the old district for the property (former Ed. Code, §§ 3347, 3348), with the charge to be collected by an annual tax levy by the new district. (Former Ed. Code, § 3347.)

In 1967 the Legislature repealed Education Code section 3347 and enacted section 1822.2 (Stats. 1967, ch. 1603), the sole difference between the sections is that under section 1822.2 the charge to be paid to the old district by the new district for the use of the old district's property could no longer be used for any lawful purpose but was to be used solely for the interest and bond redemption of the old district. With the

revision of the Education Code in 1976 (see Stats. 1976, ch. 1010), the Legislature extensively changed the apportionment of indebtedness upon reorganization of school districts. (Ed. Code, §§ 4140, 4152.) Under the current provisions of the Education Code a district acquiring property from another district becomes liable for taxation for the proportionate indebtedness of the district from which the property is acquired. (See Ed. Code, §§ 4142, 4143, 4144, 4146, 4147.)

The provision of liability for taxation for the bonded indebtedness of territory which is acquired in the reorganization of school districts is the exercise of the Legislature's plenary power over the division of property and apportionment of debts upon school district reorganization and as such is an obligation imposed by law. Former California Constitution, article XI, section 18 has no application to an obligation imposed by law and thus does not operate to prohibit the reorganization of school districts and imposition of liability for the debts previously contracted by the separate districts. (See *County of Los Angeles* v. *Byram* (1951) 36 Cal.2d 694, 698 [227 P.2d 4]; *Wright* v. *Compton Unified Sch. Dist.* (1975) 46 Cal.App.3d 177, 181 [120 Cal.Rptr. 115].) That provision thus did not invalidate the formation of the Shasta-Tehama-Trinity Joint Community College District and the creation of the liability upon the new district for taxation which ultimately pays the indebtedness of the old district.[2]

We conclude that Trinity County's decision to join the Shasta-Tehama-Trinity Joint Community College District and to levy a tax for the payment of the required annual charge was valid when it was approved by the voters. Indeed, Trinity County does not herein contend otherwise. Trinity County has made no effort to withdraw from the district or to forego its representation on the board of trustees of the district, or to otherwise yield the benefits it obtained through joining the district.

---

[2]In any event, we note that the reorganization of the district was approved by the Trinity County voters by well over a two-thirds majority. Of those that voted in the election 74 percent approved the measure, and of those who voted on that issue 79 percent voted approval. As the Supreme Court stated in *City of Redondo Beach* v. *Taxpayers, Property Owners, etc. City of Redondo Beach, supra,* 54 Cal.2d at page 134, "To us it seems manifest, however, that as long as compliance with the substantive provisions of the Constitution was had it is immaterial whether or not the election was specifically called thereunder. [Citation.] As the election held in the case with which we are here concerned resulted in a vote favorable to the issuance of the bonds of 86 per cent it would appear that the constitutional requirement of a two-thirds vote was, for all intents and purposes, fulfilled." The approval of the tax liability for the annual charge for the use of the property of the old district thus fulfilled a two-thirds requirement.

Trinity County argues only that it cannot now be taxed to pay for its use of the facilities, and that in effect one portion of the district, i.e., the old Shasta Joint College District, should be taxed to pay for the benefits used and enjoyed by the whole district.

California Constitution, article XIII A, section 1, subdivision (a) provides: "The maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties." The operation of that subdivision is limited by subdivision (b) which provides: "The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective." ■ Trinity County argues that the charge for the use of the property of the Shasta Joint Junior College District is actually rent and not an indebtedness, and thus that the tax to raise the funds for the charge is not permitted by article XIII A, section 1.

There can be no doubt that the voters of Trinity County did not assume the bonded indebtedness of the old district. The Education Code in effect at the time of the reorganization required that the question of the assumption of indebtedness be placed on a separate ballot of a different color than the question of whether to join the new district (former Ed. Code, § 3301) and required a two-thirds majority for approval. (Former Ed. Code, § 3305.) The Shasta County Committee of School District Organization and the Trinity County Committee of School District Organization specifically chose not to proceed with a vote on the assumption of the bonded indebtedness, but rather chose to proceed under former Education Code section 3347, providing for a tax levy to pay an annual charge for the use of the property of the old district. This does not mean, however, that the annual charge is not an "indebtedness approved by the voters" within the meaning of California Constitution, article XIII A, section 1, subdivision (b).

■ The term "indebtedness" has no rigid or fixed meaning, but rather must be construed in every case in accord with its context. (See 42 C.J.S., Indebtedness, p. 555.) In *Provident etc. Assn.* v. *Davis* (1904) 143 Cal. 253, at page 255 [76 P. 1034], the California Supreme Court indicated that indebtedness means a complete and absolute liability to the extent that payment must ultimately be made, but that it does

not necessarily mean that such liability has matured or that it is immediately payable. This holding is in accordance with those of other states that have considered the meaning of the term. (42 C.J.S., *supra*, Indebtedness, pp. 556-557, and notes.) There is neither any authority nor any persuasive rationale requiring that the term "indebtedness" be given a fixed, inflexible meaning which would exclude the type of payment we are considering here. In short, the term is not a word of art which excludes, as a matter of law, the annual charge due from the new district to the old.

■ The terms "indebtedness" and "bonded indebtedness" are not synonomous. (See *Hammond Lumber Co.* v. *Adams* (1936) 7 Cal.2d 24, 25-27 [69 P.2d 1030].) "Bonded indebtedness" refers to those more formal transactions of both municipal and private corporations which require such prerequisites as elections or express approval of the stockholders in order for their creation and which, when issued, take the express form of bonds. (*Id.*, at p. 27.) ■ It is significant that article XIII A, section 1, subdivision (b) does not exclude from the operation of subdivision (a), taxes levied to pay bonded indebtedness, but instead excludes taxes levied to pay *any* indebtedness approved by the voters. The choice of the broader, more flexible term over the more narrow and restrictive term indicates that the voters did not intend to limit subdivision (b) to bonded indebtedness of local agencies. ■ We must therefore consider whether the annual charge involved herein is an "indebtedness approved by the voters" within the meaning of subdivision (b).

Education is and always has been a major concern to the people of California, and the Legislature is specifically enjoined to encourage by all suitable means the promotion of education. (Cal. Const., art. IX, § 1.) The Legislature has plenary power over the reorganization and unification of school districts and may make provision for the division of property and apportionment of the debts of the old district. (*Pass School Dist.* v. *Hollywood Dist., supra*, 156 Cal. at pp. 418-419.) It was in the exercise of this plenary power and in order to avoid the common law rule which would have left both the property and the debt of the old district in the possession of the old district, that the Legislature chose to provide the reorganization options which were available at the time of the formation of the Shasta-Tehama-Trinity Joint Community College District. Under the then existing legislative scheme Trinity County was permitted to join the new district and to acquire the corresponding right to use the property of the old district by voting either to

assume the indebtedness of the old district or by voting to pay an annual charge for the use of such property in an amount equal to that amount required for the interest and redemption of the bonded indebtedness incurred in acquiring the property. In the April 1967 election, Trinity County voted to join the new district and to incur the annual charge to be raised and paid through a tax levy. This arrangement was in the nature of a contract between the new and the old districts, and this contractual relationship continued for more than 10 years prior to the addition of article XIII A to the Constitution.

■ It has long been established that when a municipality has been authorized to enter into a contract and to levy a tax in order to meet its contractual obligations, the power to tax may not be revoked until the contract is fulfilled. (See *Louisiana* ex rel. *Hubert* v. *New Orleans* (1909) 215 U.S. 170, 175-176 [54 L.Ed. 144, 147, 30 S.Ct. 40]; *Louisiana* v. *Police Jury* (1883) 111 U.S. 716, 720-721 [28 L.Ed. 574, 576, 30 S.Ct. 40].) ■ Any revocation or cancellation of the power to levy the tax approved by the voters of Trinity County when they voted to join the reorganized district would have severe consequences. The annual charge to the new district is paid in return for the right to use the property of the old district. If the legislative and voter approved agreement for the payment of that charge were nullified, the new district would lose the right to use the old district's property, which includes Shasta College in Redding, the only college in the district. (See *Pass School Dist.* v. *Hollywood Dist., supra*, 156 Cal. at pp. 418-419.) This would effectively nullify the reorganization of the district which was approved by the voters and which has been the status quo for over 10 years prior to the addition of article XIII A to the California Constitution. If the new district were permitted to use the old district's property without payment of the annual fee, the result would be a disproportionate tax burden upon some residents of the district for benefits enjoyed by all, a gross inequity and in direct contravention of the agreement of the voters when they passed the reorganization proposal. The language of subdivision (b) of section 1 of article XIII A need not, and should not, be construed to produce such an absurd result; rather, we believe that its purpose was to prevent the impairment of contracts approved by the voters in reliance upon the power of the district to levy the tax necessary to fulfill that contract. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 238 [149 Cal.Rptr. 239, 583 P.2d 1281].) We conclude that the annual payment for the use of the property of the Shasta Joint Junior College District is an indebtedness approved by the voters prior to the effective date of ar-

ticle XIII A, and that the tax levied for that purpose is not within the limitation of section 1, subdivision (a) of that article. Accordingly, the trial court did not err in issuing a writ of mandate directing that the tax be levied and the payment made in accordance with the reorganization proposal approved in the 1967 election.

The judgment is affirmed.

Puglia, P. J., and Reynoso, J., concurred.