[Civ. No. 17371. First Dist., Div. Two. Jan. 6, 1958.]

S. C. LAWRENCE et al., Respondents, v. CITY OF CONCORD et al., Appellants.

Thomas F. McBride, City Attorney, Bray, Baldwin & Ogden, John B. Ogden, Francis W. Collins, District Attorney (Contra Costa), and Charles L. Hemmings, Deputy District Attorney, for Appellants.

Hoey, Hoey, Hall & Conti, Sam W. Hall, Tinning & DeLap and Robert Eshleman for Respondents.

DRAPER, J.—Plaintiffs brought this action to recover money paid under protest to the city of Concord, and for a declaration that the contract under which the payment was demanded is void. In 1953, the three corporate defendants, referred to in the contract as "Developers," proposed to subdivide an area within defendant city. On September 25, 1953, they entered into a written contract with defendant city and defendant county of Contra Costa. This contract recites that waters from the proposed subdivision, as well as from other lands both within and without defendant city, flow into a natural drainage channel or ditch. It was desirable to enlarge and improve this channel to accommodate increased runoff which would result from the then proposed subdivision, as well as from other developments expected within the drainage area during the next 10 years. After these recitals, the agreement provides that the corporate defendants shall build drainage structures the cost of which is stated to be $67,600, including $2,000 attorneys' fees and $3,600 engineering fees. It was agreed that only one-third of this amount "is a proper allocation against the Developers for their proportion of the cost of construction of said drainage facilities," and that the remaining two-thirds, $45,100, "is a proper charge and allocation" against the remaining lands in the total drainage area determined by the contract to be benefited. Defendants county and city did not obligate themselves to pay this sum of $45,100 to defendant developers. They did, however, agree to collect from each later subdivider of lands in the area, as a condition to approval of subdivision maps, a fee of $75 for each acre subdivided, and to pay such collections to defendant developers for 10 years or until the payments totalled $45,100.

On October 4, 1954, plaintiffs submitted to the council of defendant city a subdivision map covering property in the drainage area defined in the contract just described. It complied with all requirements of the municipal code and of the state Subdivision Map Act, and had been approved by the city planning commission. The council refused to approve

the map, solely upon the ground that plaintiffs had not paid the fee of $75 per acre required by the 1953 contract. Plaintiffs paid $1,869.08 under protest, and the city agreed to hold the money subject to final determination of its right thereto. The map was then approved and plaintiffs brought this action. Judgment was entered in favor of plaintiffs, and defendants appeal.

The determinative question is whether the imposition of charges upon subsequent subdividers, under this contract, is authorized. Appellants rely upon two code sections as giving such authority. As in force at the date of the contract, they provided:

"Whenever a local ordinance requires that a subdivider install sewers as a condition precedent to the acceptance of a final map or filing of the record of survey map, and where, in the opinion of the governing body it is necessary that laterals or other facilities be constructed which can be, or will be, used in the disposal of sewage from property in the subdivision, and such sewers are dedicated to the public, the governing body may by contract with the subdivider agree to reimburse and may reimburse the subdivider for such lateral or other facility. Such contract shall provide that the governing body may collect from any person using such lateral or other facility for the disposal of sewage from property not within such subdivision a reasonable charge for such use." (Bus. & Prof. Code, § 11543.)

"Whenever the governing body has reimbursed or agreed to reimburse a subdivider for the construction of a lateral or other facility which can or will be used by persons for the disposal of sewage from property other than that being subdivided by such subdivider, such governing body may impose and collect for such use a reasonable charge." (Bus. & Prof. Code, § 11544.)

It is clear that these code sections relate only to sanitary sewers, and not to storm drains. Each section not only limits its application to "sewers," but specifically refers to "disposal of sewage," and there can be no question that a drainage system for disposal of rainwater is not within the operation of the two sections.

Appellants point, however, to the 1955 amendments of these sections. As amended, the first clause of section 11543 reads: "Whenever a local ordinance requires that a subdivider install sewers, drains, or other facilities for sewers and drains as a condition precedent to the acceptance of a

final map," and the qualifying phrase "for the disposal of sewage" is eliminated from both sections. These amendments, if constitutional, make clear that drainage facilities of the type here involved have, since 1955, been within the scope of the code sections. But there remains the question how these amendments can serve to authorize a contract made two years before the effective date of the amendments.

Appellants first point to section 3 of the statute by which these amendments were adopted (Stats. 1955, ch. 703, p. 1189), which reads: "The amendments made by this act do not constitute a change in, but are declaratory of, the pre-existing law." Appellants argue that by this provision the Legislature is "spelling out in 1955 what it meant to convey in 1953," and that this legislative construction of the 1953 statute is binding upon us. But the rule is to the contrary. "[T]he court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms." (*California Emp. etc. Com.* v. *Payne*, 31 Cal.2d 210, 214 [187 P.2d 702].)

Appellants next argue that the 1955 amendments amounted to a ratification of the 1953 contract. They cite authority for the rule that the Legislature has power to ratify a contract which it could have authorized by legislation adopted before its execution (10 McQuillin, Mun. Corp., 3d ed., 444). But, if the rule be conceded, it does not aid appellants here. The 1955 amendments do not contain any language even remotely relating to ratification of contracts previously made. Legislative intent to ratify must appear from the statute relied upon (*Dreves* v. *Osolo School Tp.*, 217 Ind. 388 [28 N.E.2d 252, 128 A.L.R. 1405]).

Appellants also contend that a judgment in an action for declaratory relief must declare the rights of the parties as of the date of judgment. Admitting the validity of this rule in a proper case, no authority warrants its application to the case at bar. Here the issue is the validity of the 1953 contract. The fact that the action is for declaratory relief certainly does not warrant reliance upon 1955 statutes as constituting authority to the public bodies to contract in 1953.

Appellants argue that the recitals of the contract constitute "jurisdictional findings" by the council and board of supervisors, and that they are not subject to "collateral attack." Whatever merit this argument might have if these bodies had'

acted under a statute authorizing action when certain facts were found to be true, it can have none here. No statutory authority existed for any action passing these costs along to later subdividers.

Appellants also argue at length that the city had authority to provide for drainage and storm sewers. Such authority is unquestioned. But here the question concerns the manner of payment for such improvements. That chosen by appellants deprives those charged with two-thirds of the cost of the right to be heard upon the important issue of the extent of benefit received by them, and the proper allocation of costs, a right which would have been theirs had a special assessment district been formed. It deprives them also of the safeguard of competitive bidding as a means of determining the fair cost of the drainage structures, a protection they would have enjoyed had the improvements been made either by assessment district procedure or by direct expenditure from the general funds of the city and county. It should be noted, further, that in the case of sanitary sewers later subdividers would have the option of connecting to the sewer built by the first subdivider, or constructing a new lateral to the sewer main. There is no such option in the case at bar, where surface runoff necessarily is to the improved drainage channel. We specifically refrain from passing upon the constitutionality of the 1955 amendments. We do hold that, whatever the effect of those amendments, the 1953 statutes did not authorize the procedure here used, and the contract therefore is unenforceable as against plaintiffs.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.