[Civ. No. 55587. Second Dist., Div. Four. Sept. 13, 1979.]

KERN COUNTY WATER AGENCY, Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF KERN COUNTY et al.,
Defendants and Appellants;
DEPARTMENT OF WATER RESOURCES,
Intervener and Respondent.

**COUNSEL**

Ralph B. Jordan, County Counsel, D. N. Reid, Assistant County Counsel, and Craig S. Tarpenning, Deputy County Counsel, for Defendants and Appellants.

Thomas J. Graff as Amicus Curiae on behalf of Defendants and Appellants.

Borton, Petrini & Conron, Roy J. Gargano and David R. Lampe for Plaintiff and Respondent.

George Deukmejian, Attorney General, R. H. Connett, Assistant Attorney General, and Denis D. Smaage, Deputy Attorney General, for Intervener and Respondent.

Robert P. Will, Carl Boronkay, Peter M. Thorson, Loebl, Bringgold, Peck & Parker, James D. Loebl, Burris, Lagerlof, Senecal & Swift, Stanley G. Lagerlof, Donald S. Greenberg, City Attorney (City of San Buenaventura), Redwine, & Sherrill, Maurice C. Sherrill, Best, Best & Krieger, Dallas Holmes, Arthur L. Littleworth, James K. Abercrombie, James G. McCain, Ross Amspoker, Edward F. Taylor, James W. Dilworth, Helm, Budinger & Lemieux, Ralph B. Helm, James B. Lindholm, County Counsel (San Luis Obispo), Scovil F. Hubbard, Deputy County Counsel, George P. Kading, County Counsel (Santa Barbara), Robert D. Curiel, Chief Assistant County Counsel, Albert T. Henley, Rutan & Tucker, H. Rodger Howell, Arthur G. Kidman, Bold & Polisner, Frederick Bold, Jr., Romney, Smith & Drescher, Philip C. Drescher and Sidney J. W. Sharp, Jr., as Amici Curiae on behalf of Plaintiff and Respondent and Intervener and Respondent.

## OPINION

**KINGSLEY, J.**—The Board of Supervisors of Kern County[1] appeals from a judgment granting a writ of mandate compelling it to compute and levy a tax for the benefit of respondent Kern Water Agency. We reverse the judgment insofar as it provides for taxes for certain obligations of the agency but affirm it as to the remainder of the taxes involved.

Although the record and briefs before us are extensive, the material facts may be stated with some brevity. In 1959 the Legislature adopted, and in 1960 the voters of California approved, the so-called Burns-Porter Act (Wat. Code, §§ 12930-12944).[2] That act provided for the issuance of state bonds to finance what is known as the State Water Project. Under it, the Department of Water Resources was empowered to construct an elaborate system for providing water to areas in the Central Valley, including Kern County, and to contract with local agencies for the

---

[1] The county auditor is joined as a party defendant and is a coappellant on this appeal. For convenience we refer in the opinion only to the defendant and respondent board.

[2] Officially the "California Water Resources Development Bond Act." (Wat. Code, § 12930.)

purchase and resale of the water thus made available. Section 12937 of the Water Code sets up an elaborate system for the funding of the department. Under that section, the primary source for the payment of the operating expenses of the department and for payment of principal and interest on the bonds issued thereunder is the money collected by the department from the sale of water and power to the various districts. It is only where that source turns out to be inadequate that resort is to be made to the general fund of the state.

In 1961, pursuant to legislative action and the approval of the voters of Kern County, plaintiff Kern Water Agency was established and entered into a contract with the department for the purchase of water from the project. Over the years since 1961, that contract has been amended several times, none of which amendments having been submitted for voter approval.

The agency, in turn, has entered into contracts with several local water districts which, in their turn, deliver water to ranchers and farmers for irrigation and subterranean water storage.

For some years prior to 1978 the revenue accruing to the agency from the resale of water under such contracts was insufficient to enable the agency to meet its obligations to the department under its contract and the deficiency was made up by ad valorem taxes on the real property in the area served by the agency.

In 1978 the voters of California adopted an amendment to the state Constitution (Cal. Const., art. XIII-A), commonly known as Proposition 13, which, insofar as is here pertinent, provided in section 1, as follows:

"Section 1. (a) the maximum amount of any ad valorem tax on real property shall not exceed one percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties.

"(b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective." Because the agency anticipated a similar deficiency in 1978-1979 in its revenues from resale of water, it asked the Board of Supervisors of Kern County to include in the taxes to be assessed for the fiscal year 1978-1979, the amount of $4,693,290, to meet that deficiency. The board approved that request, conditioned on the

agency securing a final court order adjudicating the legality of such assessment and levy. The present litigation followed, resulting in a judgment validating the taxes. The taxes involved have been levied and collected but are being held in a special account pending the finality of this litigation. The board has appealed. We affirm the judgment except as to a minor portion of the taxes involved.

The extensive briefs filed by the parties litigant and by the amici curiae have discussed a variety of theories on which the judgment can be affirmed. In the view that we take of the facts and the constitutional provision above quoted, we need consider only one.

I

The trial court found, and the record shows, that the agency cannot meet its obligations under the contract with the department without the aid of the taxes herein involved. The contract approved by the voters of Kern County contained the following provision (art. 34): "If in any year the Agency fails or is unable to raise sufficient funds by other means, the governing body of the Agency shall levy upon all property in the Agency not exempt from taxation, a tax or assessment sufficient to provide for all payments under this contract then due or to become due within that year."

The original contract between the agency and the department, also contained a provision (art. 36), which authorized the agency and the department to amend the original contract "at any time by mutual agreement of the parties, except insofar as any proposed amendments are in any way contrary to the applicable law."

Except for several amendments changing the administrative provisions of the original contract—none of which have been shown to have increased the agency's monetary obligation to the department—only one can, by any theory, be treated as here important. The original contract provided for the sale and delivery by the department of 1 million acre-feet per year. The contract also contemplated that, if it should develop that the department was able to sell and deliver more than that amount, the agency could purchase such additional amount. The amendment which we here consider did, pursuant to that option, increase by 153,400 acre-feet per year the water to be delivered and sold. However, the amendment that increased the amount of water to be delivered and sold did not increase the agency's obligation to the

department. The agency is still obligated to pay for only the original 1 million acre-feet; the additional water is delivered to four of the subagencies in Kern and is paid for in full from the revenues of those subagencies.

As we have indicated above, section 12937 of the Water Code provides that the revenues of the department shall be devoted, first, to the necessary costs of maintenance and operation of the facilities envisaged by the Burns-Porter Act and, secondly, to the payment of interest and redemption charges on the bonds authorized by that act to finance the construction of the facilities of the district. It appears from the last report of the department that, for the year 1979, the department's total revenues from contracts such as is herein involved, will be $131,601,000, of which $82,340,000 will be applied to pay interest and redemption charges, or, in round figures, over 60 percent. The findings of fact by the trial court (not here challenged) show that the agency owes the department $19,452,000, of which $14,760,566 will come from collections from the local districts, leaving the amount of the tax levy herein involved at $4,693,290. In round figures, again, the agency pays 80 percent of its total revenue out of water charges and 20 percent out of the tax levy. A simple calculation thus shows that the agency will pay, out of the taxes herein involved, less than 25 percent of the amount the department must pay for interest and redemption charges. In every real sense, the taxes herein involved are necessary to meet the bond indebtedness approved by the voters in 1960, and reapproved by the voters of Kern County.

It thus follows that the tax levy herein involved is (except for one minor item hereinafter discussed) expressly authorized by subdivision (b) of Proposition 13, which provides for "ad valorem taxes . . . to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time" it became effective.

II

In 1969 and in 1977, the Corps of Engineers of the United States Army, at the request of the agency, constructed and repaired certain levees made necessary by flood waters and other events. In connection with that construction, the agency "assured" the United States that it would, at its expense, maintain and operate the levees so constructed or repaired. The taxes requested by the agency and herein involved contain $52,536 for that purpose. Clearly, that obligation is not included in the agency's obligation to the department, and it is not contended that it was an

obligation approved by the voters of Kern County. The argument here made for its inclusions in the taxes herein involved is that, absent such tax funds, the agency will violate its contract[3] with the Corps of Engineers. However, unlike the case of funds to be used to meet the obligation of the agency to the department, we have no finding that the obligation to the Corps of Engineers cannot be met without the use of ad valorem taxes or assessments. On this record, we cannot hold that the denial of that $52,000 will result in a violation of any contract.

It is suggested that the levy on the properties in the local districts affected by those levees is a "Special Assessment," not covered by Proposition 13. The districts herein involved—Improvement Districts Nos. 1 and 3—were created pursuant to section 14.4 et seq. of the Kern County Water Act (Cal. Wat. Code, Appen., § 99-14.4 et seq.). The authority given to those districts by that statute is to raise funds by ad valorem taxation. Assuming, without here deciding, that an improvement district, statutorily authorized so to do, can raise funds without voter approval by a levy based on benefits measured other than by the assessed value of real property, the tax herein before us does not meet that test.

The judgment is reversed insofar as it purports to validate taxes or assessments in the amount of $52,536 on property in Improvement Districts Nos. 1 and 3; otherwise it is affirmed. The agency shall recover its costs on appeal.

Files, P. J., and Alarcon, J., concurred.

On October 5, 1979, the opinion was modified to read as printed above.

---

[3]For the purpose of this opinion, we assume, without determining, that the arrangement between the agency and the Corps of Engineers was a binding unilateral contract.