[Civ. Nos. 51098, 52952. First Dist., Div. Four. Nov. 4, 1982.]

CITY OF WATSONVILLE, Plaintiff and Appellant, v.
ARTHUR MERRILL, as Auditor, etc., Defendant and Respondent.

[Civ. No. 52952. First Dist., Div. Four. Nov. 4, 1982.]

CITY OF WATSONVILLE, Plaintiff and Appellant, v.
ARTHUR MERRILL, as Auditor, etc., Defendant and Respondent.

COUNSEL

Donald R. Haile, Anderson & Douglas and Robert T. Anderson for Plaintiff and Appellant.

Clair A. Carlson, County Counsel, and Dwight L. Herr, Chief Deputy County Counsel, for Defendant and Respondent.

John Howard Sullivan as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

**CALDECOTT, P. J.**—This is a consolidated appeal in which plaintiff City of Watsonville (City) appeals from adverse judgments rendered in favor of the respective respondents.

The essential facts leading to the present appeals may be summarized as follows.

On February 26, 1949, the City entered into a contract with the State Employees Retirement System (now the Public Employees Retirement System (PERS)) which provides for the City to participate for and on behalf of its employees in PERS pursuant to the provisions of the Public Employees Retirement Law (Gov. Code, § 20000 et seq.). Said contract has been amended several times, the last amendment becoming effective on July 7, 1979. Pursuant to the contract and the retirement statute the employees of the City who are members of the retirement system acquire vested right in their pension and the City bears a continuing obligation to both PERS and employees who have such vested rights to make annual payments to PERS.

Appellant is a charter city. The charter was approved and adopted by the voters of the City at a special municipal election on February 16, 1960, and became effective on March 15, 1960. It has been continuously in effect since that date.

City charter, section 1006 (entitled Pension and Retirement System) provides as follows: "The City, its Council and its several officers and employees are hereby vested with the power to do and perform any act, and to exercise any authority granted, permitted or required under the provisions of the State Employees' Retirement Act, as it now exists or hereafter may be amended, to enable the City to continue as a contracting City under the State Employees' Retirement System, and, in addition, to participate in any pension system now or hereafter existing under the laws of the United States of America to which municipal officers and employees are eligible.

"Participation in any such plan or retirement benefits shall not be extended to any officer or employee theretofore retired except by approval of the Council; provided, however, that no person heretofore retired shall be deprived of his existing pension rights.

"No retirement or pension plan, heretofore or hereafter established, may be discontinued or terminated except under authority granted by an ordinance adopted by a majority vote of the electors of the City voting on such proposition at an election at which such proposal is presented, unless such action has been approved by a majority vote of the members affected."

City charter section 1122 (entitled Tax Limits), in turn, sets out as follows: "(a) General. The Council shall not levy a property tax for municipal purposes in excess of One and fifty five/100ths ($1.55) Dollars on each One Hundred and no/100ths ($100.00) Dollars of the assessed value of taxable property in the City, except as otherwise provided in this Section, unless authorized by the affirmative votes of a majority of the electorate voting on a proposition to increase such levy at any election at which the question of such increased levy for municipal purposes is submitted to the electors. The number of years for which such increased levy is to be made shall be specified in such proposition.

"(b) Additional Taxes. There shall be levied and collected, as additional taxes, at the time and in the same manner as other property taxes for municipal purposes are levied and collected if no other provision for the same is made:

"(1) A tax sufficient to meet all liabilities of the City for principal and interest of all bonds or judgments due and unpaid, or to become due during the ensuing fiscal year, which constitute general obligations of the City; and

"(2) A tax sufficient to meet all obligations of the City to the State Employees' Retirement System, or other system for the retirement of City employees, due and unpaid or to become due during the ensuing fiscal year."

In compliance with the aforecited provisions, appellant, since the adoption of the charter, has levied and collected additional taxes in order to make financial contributions to PERS on behalf of its employees and thereby secure their pension rights under the retirement system. However, as widely known, on June 6, 1978, the California voters adopted Proposition 13, which placed severe limitations on property taxes to be levied and collected by the state or the local entities. California Constitution, article XIII A, section 1, which has incorporated the provisions of Proposition 13, provides as follows: "(a) The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties.

"(b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective."[1]

Taking the position that the retirement contribution to PERS constituted an indebtedness which had been approved by the voters prior to the adoption of Proposition 13, appellant directed respondent Arthur Merrill, the Auditor of Santa Cruz County, to levy and collect property taxes in the sum of $282,321 for the 1978-1979 fiscal year in order to discharge the City's legal obligation to PERS. Although respondent auditor complied with appellant's request and collected the required sum, he impounded the funds and refused to turn the money over to the City. Thereupon, on May 18, 1979, appellant brought an action to compel the auditor to pay the collected sum to the City (action No. 69599). Respondent auditor filed a demurrer to the petition which was sustained without leave to amend on the grounds that the charter provision authorizing additional taxes to finance employee retirement cost was not a prior voter-approved indebtedness within the meaning of article XIII A, section 1, subdivision (b) and therefore was barred by the limitations provided by subdivision (a) of the same

---

[1]Revenue and Taxation Code section 2237 (now § 93) also provides in pertinent part that: "(a) Notwithstanding any other provisions of law, except as provided in subdivision (b), no local agency, school district, county superintendent of schools or community college district shall levy an ad valorem property tax, other than that amount which is equal to the amount needed to make annual payments for the interest and principal on general obligation bonds or other indebtedness approved by the voters prior to July 1, 1978 or the amount levied pursuant to Part 10 (commencing with Section 15000) of Division 1 and Sections 39308, 39311, 81338, and 81341 of the Education Code."

section. Consistently therewith, a judgment dismissing the action was entered on July 5, 1979, from which the City appealed.

Following the filing of the notice of appeal, section 2237.1 was added to the Revenue and Taxation Code, which as a temporary measure, provided that the City charter provisions which were approved by the voters prior to July 1, 1978, and required a city to levy additional taxes to pay obligations under the retirement system for city employees constituted indebtedness within the meaning of article XIII A, section 1, subdivision (b). The section, however, specified that it shall be operative only for the 1978-1979 and 1979-1980 fiscal years. Based upon this legislation, the parties entered into a stipulation whereby the auditor agreed to release to the City the impounded funds collected for the 1978-1979 fiscal year and the City agreed to dismiss the action on the basis of mootness.

In order to be able to pay its obligation to PERS, falling due in the 1979-1980 fiscal year, the City again directed the auditor to levy and collect property taxes in the amount of $443,099. The auditor levied the additional taxes for the City's retirement fund in the required amount but, similar to the first instance, refused to pay the money over to the City for the reasons set out in the antecedent legal dispute. Thereupon, on May 21, 1980, the City brought a second action against the auditor (action No. 73334) seeking a writ of mandate to compel the release of the funds collected for the 1979-1980 fiscal year, and a judicial declaration that the City charter provisions authorizing an additional property tax to finance the employee retirement costs were legally valid, enforceable and unaffected by the tax limitations imposed by article XIII A. On June 30, 1980, the court sustained the auditor's demurrer without leave to amend on the grounds of res judicata and collateral estoppel and dismissed the action by an order filed on August 29, 1980. The first appeal pending before us (appeal No. 51098) has been taken from this order.

During the pendency of the first appeal, on August 12, 1980, the Watsonville City Council adopted ordinance No. 508-80, an urgency measure, requesting the County of Santa Cruz to levy upon the taxable property of the City for the fiscal year beginning July 1, 1980, property taxes in the sum of $491,010, in order to discharge its retirement payment obligation to PERS. When the county auditor refused to levy the additional taxes for the 1980-1981 fiscal year, appellant itself levied and collected said property taxes. Simultaneously, appellant filed a legal action against all persons interested in which it sought judgment to the effect that the additional tax provisions of the City charter were valid and effective. On February 11, 1981, trial was conducted in the validation action at the conclusion of which the court held that the additional property tax levied in order to fund the City's retirement costs was invalid and unconstitutional, and in consonance therewith the court directed appellant to refund to the taxpayers

the additional property tax levied and collected after July 1, 1980. The second appeal at bench (appeal No. 52952) was filed from the judgment rendered in the invalidation action. In an effort to facilitate the disposition of both appeals in a single opinion, we granted a motion to consolidate the two appeals.

The issue raised in the cases at bench has been recently addressed and decided by our Supreme Court in *Carman* v. *Alvord* (1982) 31 Cal.3d 318 [182 Cal.Rptr. 506, 644 P.2d 192]. In *Carman,* similar to the instant case, the local electors approved a ballot measure well prior to the adoption of article XIII A, which authorized the city to join the State Employees Retirement System (now PERS). According to the enactment the city was empowered to levy and collect annually a special tax sufficient to meet the obligation of the city to the retirement system. The city exercised the authority, contracted with PERS, and began collecting annual taxes to fund its contributions. Since the city continued to levy additional property taxes in order to defray its PERS obligations even after July 1, 1978, the effective date of article XIII A, plaintiff brought a class action against the tax collector. He contended that the PERS tax violated article XIII A, section 1, subdivision (a), inasmuch as it exceeded the 1 percent limit set in that section. In addition, plaintiff argued that the PERS tax levied by the city failed to constitute an exception under subdivision (b) of the same section because the natural and ordinary meaning of "interest and redemption charges on any indebtedness" connotes fixed debt, not general contractual obligations such as the city's agreement to participate in the State Public Employees' Retirement System.

The Supreme Court rejected plaintiff's contentions and held that the city's pension plan obligations to PERS constituted an indebtedness within the meaning of article XIII A, section 1, subdivision (b), and that as a consequence the city was authorized to levy and collect additional property tax for PERS contributions under the exception set out in that subdivision.

■ In countering the argument that interest and redemption charges on indebtedness include only fixed debts, not general contractual obligations, the court reasoned that the term "indebtedness" has no rigid or fixed meaning, but rather must be construed in every case in accord with its context. (*County of Shasta* v. *County of Trinity* (1980) 106 Cal.App.3d 30, 38 [165 Cal.Rptr. 18].) It can include all financial obligations arising from contract and it encompasses obligations which are yet to become due as well as those which are already matured. Based upon this reasoning the court concluded that indebtedness as traditionally understood covers obligations arising under the city's pension plan. (*Carman* v. *Alvord, supra,* 31 Cal.3d 318 at p. 326.) Finally, the court added that the PERS contributions comprise redemption charges, inasmuch as redemption is defined as " '[t]he payment of principal and unpaid interest on bonds or other debt obligations.' " (P. 327; italics omitted.)

■ The cases at bench fall squarely within the reasoning of *Carman*. As set out earlier, the City entered into a contract with the State Employees' Retirement System in 1949. Article XIII A, section 1, subdivision (b) provides: "The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective." *Carman* says the time of voter approval of the pension system is the controlling time, not the time the indebtedness is incurred or accrues. The City charter which provides for additional taxes for pension contributions was approved by the voters of the City in 1960. The charter provides: "The City, its Council and its several officers and employees are hereby vested with the power to do and perform any act, and to exercise any authority granted, permitted or required under the provisions of the State Employees' Retirement Act, as it now exists or hereafter may be amended, to enable the City to continue as a contracting City under the State Employees' Retirement System. . . ." Thus, the indebtedness was approved by the voters prior to the effective date of article XIII A, and as *Carman* points out, the indebtedness referred to is not limited to an indebtedness that was fixed and certain at the time of approval. It follows that the additional property tax at issue falls within the exception of article XIII A, section 1, subdivision (b), as a voter-approved prior indebtedness and that as a consequence the levy and collection thereof is not prohibited by the 1 percent limitation set out in subdivision (a) of that section.

■ Respondent's alternative contention that even if the additional property tax is generally permissible and constitutional under *Carman,* the property tax levied by appellant in the present cases is invalid because it exceeds the amount of retirement contribution approved by the voters prior to the effective date of Proposition 13, cannot stand for three basic reasons. One, the contract entered into by the City and PERS explicitly provides that all provisions of the contract are subject to the Public Employees Retirement System Law. Two, the City charter likewise sets out that additional taxes shall be levied and collected in sufficient amount in order to meet all obligations of the City becoming due in the ensuing fiscal year. Three, addressing the same issue, the court in Carman, emphasized that "Contributions to PERS are in the nature of insurance premiums ([Gov. Code,] § 20456); during the contract term they represent the employer's ongoing share of the actuarial equivalent of amounts necessary to fund current and future benefits due covered employees, statewide . . . ," and that "City's voters . . . authorized the special tax set by statute insofar as necessary to fund the [PERS] obligations ([Gov. Code,] Former § 20532). Necessarily, they approved all indebtedness to employees, current and future, that would be incurred." (*Carman* v. *Alvord, supra,* 31 Cal.3d 318 at pp. 325-326.)

In the cases at bench, the additional tax in dispute was necessary to discharge the City's obligation to PERS. Its amount was determined on the basis of the presently existing retirement statute and actuarial tables. As pointed out earlier, the change in the amount of the employer's contribution was both envisaged and approved by the voters when the City joined the retirement system. It follows that the additional tax here challenged qualifies as a voter-approved prior indebtedness in its entirety and that respondent's claim to the contrary is without merit.

■ Respondent's third major contention is that the rulings below should be affirmed in both cases because the actions at bench are barred by the doctrine of res judicata and/or collateral estoppel. Respondents' argument is apparently predicated on a stipulation entered in action No. 69599, whereby the parties agreed that the auditor would release to the City the funds collected for the 1978-1979 fiscal year and that the City, in return, would dismiss the action against the auditor with prejudice.

■ As outlined in the case law, the doctrine of res judicata has a double aspect: (1) it precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction; and (2) any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action. The latter aspect of res judicata is often termed collateral estoppel. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892].)

■ In light of the above definition, respondent's contention must fail for · the reason that the stipulation referred to above contains final determination or adjudication only as to the tax fund collected by the auditor for the 1978-1979 fiscal year. However, as to the crucial issue of the constitutionality of future taxes (i.e., the additional property tax collected for the 1979-1980 fiscal year, etc.), the very issue presented in the consolidated appeals, the stipulation entails no provision other than such determination must wait until an appellate court undertakes to adjudicate that issue. It is all but obvious that in a total lack of determination of the constitutionality of the additional property tax respondent may not well claim that the stipulation erects a bar to litigate the consitutionality of the property tax provisions of the City charter.

But even aside from the language of the stipulation, there is an additional reason why respondent may not invoke the doctrine of res judicata here. ■ As frequently emphasized, where, as here, the only issue between the parties is one of law, the doctrine of res judicata or collateral estoppel may not be relied upon if the assertion of the doctrine would result in injustice. (*City of Los*

*Angeles* v. *City of San Fernando* (1975) 14 Cal.3d 199, 230 [123 Cal.Rptr. 1, 537 P.2d 1250]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758].)

■ As discussed in detail earlier, the crucial issue in the actions before us is the constitutionality of the City charter which allows the levy and collection of additional property tax in order to discharge the City's obligation to PERS. This issue, as set out above, has been determined with finality in appellant's favor in *Carman* v. *Alvord, supra,* 31 Cal.3d 318, a Supreme Court decision. Under these circumstances, it would be both unjust and unreasonable to allow respondent to invoke the doctrine of res judicata in order to deprive appellant of its right to collect additional property tax based upon ill-applied, rigid legal technicalities.

In view of our conclusion, the further issues raised by the parties need not be discussed.

In action number 1 Civil 51098/A011921, the order dismissing the action is reversed.

In action number 1 Civil 52952/A012122, the judgment is reversed.

Rattigan, J., and Poché, J., concurred.

A petition for a rehearing was denied December 2, 1982.