[No. F003641. Fifth Dist. May 10, 1984.]

CITY OF FRESNO, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
TAXPAYERS ASSOCIATION OF FRESNO COUNTY et al.,
Real Parties in Interest.

COUNSEL

James A. McKelvey, City Attorney, and C. William Brewer, Assistant City Attorney, for Petitioner.

No appearance for Respondent.

Andrews, Andrews, Thaxter & Jones, Richard D. Andrews and Stephen A. Hansen for Real Parties in Interest.

OPINION

**BROWN (G. A.), P. J.**—The central issue in this proceeding is whether an ordinance enacted by the City of Fresno (City) violates article XIII A (Proposition 13) of the California Constitution limiting the amount of property taxes that may be assessed. The trial court held that the tax is invalid. We disagree.

On August 16, 1983, the City enacted City of Fresno Ordinance No. 83-116[1] which imposed a property tax for the fiscal year 1983-1984 at a rate of .032438 per $100 of gross assessed valuation in order to raise $2.05 million. The tax has been collected and is being held by the County of Fresno subject to finality of the decision herein. The ordinance earmarked the proceeds of the tax for payment into the "Fresno Fire and Police Retirement System" (FAPRS) and the "Fresno City Employees' Retirement System" (CERS) for the purpose of meeting the City's financial obligation "for retirement system costs." The preamble to the ordinance recited in part that "the Fresno Fire and Police Retirement Fund and the Fresno City Employees' Retirement Fund are measures approved by the voters prior to the effective date of Article XIIIA [Proposition 13]; . . ."

Effective July 1, 1978, Proposition 13 was approved by the voters of California and became part of the California Constitution. Section 1, subdivision (a), of Proposition 13 establishes a 1 percent maximum property tax. Subdivision (b) of section 1 contains an exception to the 1 percent limit. Subdivision (b) provides: "The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective."

On April 8, 1957, the voters of the City adopted the Charter of the City of Fresno (hereinafter City Charter). Section 1100 of the City Charter provides: "SECTION 1100. RETIREMENT SYSTEM. The Council shall by ordinance provide for and establish a fund or funds for the relief and pensioning of all employees of the City of Fresno, except elective officers and part-

---

[1]All references to ordinances are to City of Fresno ordinances unless otherwise noted.

time employees, who have been disabled or become superannuated in the service of the City and shall provide for the administration of such fund or funds; provided, however, that retirement benefits established by any ordinance existing at the effective date of this Charter shall not be reduced, decreased or diminished."

Before the adoption of the City Charter the City had enacted ordinance No. 2502 (Mar. 30, 1939) and ordinance No. 4611 (Mar. 31, 1955) creating CERS and FAPRS, respectively.

In 1958, subsequent to the adoption of the City Charter, the City enacted ordinance No. 5313 which repealed the ordinances pertaining to the two retirement systems then in effect and established a new CERS and FAPRS. These two retirement systems both contained provisions creating a "fund"[2] with the same name as the respective systems. Section 2-1702 of ordinance No. 5313, entitled "Creation of Retirement System," begins by stating, "There is hereby created the Fresno Fire and Police Retirement System." Section 2-1710(a), which deals with the creation and control of the FAPRS fund, states, "A fund is hereby created in the City Treasury, to be known as the Fresno Fire and Police Retirement Fund . . . ." Section 2-1802 of ordinance 5313, entitled "Creation of Retirement System," states, in part: "The Fresno City Employees' Retirement System was created by Ordinance No. 2502, effective June 1, 1939, and said retirement system is continued in effect by this article." Section 2-1811 of ordinance No. 5313 provides, in part: "A fund is hereby created in the City Treasury, to be known as the Fresno City Employees' Retirement Fund . . . ." The provisions of ordinance No. 5313 have never been approved by the voters of the City of Fresno.

For the purpose of litigating the validity of the property tax established by ordinance No. 83-116 the City, pursuant to Government Code section 53511 and Code of Civil Procedure section 860, filed a complaint against "All persons interested in the matter of the validity of an additional property tax levied on behalf of the City of Fresno necessary to meet obligations of the city to its retirement systems." The Taxpayers Association of Fresno County and John J. Sullivan (collectively referred to as Taxpayers) appeared and answered the complaint and filed a cross-complaint. Taxpayers and the City each moved for a summary judgment on the cross-complaint and complaint, respectively (Code Civ. Proc., § 437c). The trial court granted the motion of Taxpayers for summary judgment and held ordinance No. 83-116

---

[2]The provision creating this "fund" and the provisions creating all of the other "funds" referred to in this opinion essentially state that a "fund" is created in the city treasury and then set forth the name the fund will have.

void and unconstitutional as being in contravention of Proposition 13 and denied the City's motion. In explanation the court stated: "2. The retirement fund obligations of the City of Fresno under both of its retirement systems (the Fire and Police Retirement System and the City Employees' Retirement System) do not constitute voter-approved indebtednesses within the meaning of Section 1(b) of Article XIIIA of the California Constitution; . . ."

The City filed this petition for writ of mandate asking this court to direct the trial court to set aside its summary judgment and enter summary judgment in favor of the City.

### DISCUSSION

Preliminary to reaching the merits, we dispose of several procedural issues raised by Taxpayers in this court by way of demurrer and affirmative defenses to the petition for writ of mandate.

■ Taxpayers contend that the writ should be dismissed because it was not timely filed. They base their argument on Code of Civil Procedure section 437c, subdivision (1), which establishes a 10-day time limit for filing a petition for a peremptory writ following the "entry of any order pursuant to this section except the entry of summary judgment . . . ." The section expressly excepts summary judgments from the time limit. The entry of a summary judgment was the basis of the petition herein. Accordingly, the point is meritless.

■ Taxpayers also argue that petitioner's remedy at law is adequate. The issuance of the order to show cause by this court is a conclusive determination that the remedy at law is inadequate. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593].)

Lastly, we grant Taxpayers' request that we take judicial notice of certified copies of certain official reports and documents insofar as they are relevant and were before the trial court. (Evid. Code, § 452, subds. (b), (h); *People* v. *Preslie* (1977) 70 Cal.App.3d 486, 492-494 [138 Cal.Rptr. 828].)

■ Turning to the merits, the parties agree that no triable issue of fact exists and that the issue presented is one of law. Succinctly stated, the principal issue is whether the voters' approval of section 1100 of the City Charter constitutes prior voter approved indebtedness authorizing the City to raise taxes to finance retirement systems costs under section 1, subdivi-

sion (b) of Proposition 13. The pertinent part of subdivision (b) of section 1 provides: "ad valorem taxes . . . to pay the interest and redemption charges on any indebtedness approved by the voters prior to the time this section becomes effective" are exempt from the 1 percent limitation contained in subdivision (a).

■ "Indebtedness" within the meaning of section 1, subdivision (b) of Proposition 13 includes the payments a city must make to satisfy its financial obligations to pension plans for its employees. (*Carman* v. *Alvord* (1982) 31 Cal.3d 318 [182 Cal.Rptr. 506, 644 P.2d 192]; *Valentine* v. *City of Oakland* (1983) 148 Cal.App.3d 139 [196 Cal.Rptr. 59]; *City of Watsonville* v. *Merrill* (1982) 137 Cal.App.3d 185 [186 Cal.Rptr. 857].) ■ Therefore, if the City's financial obligation to contribute to pension funds was approved by the voters of the City prior to the adoption of Proposition 13, the City can increase property taxes beyond 1 percent to cover the cost of the City's obligation to its pension funds.

Some preliminary observations are appropriate. First, the only thing approved by the voters in this case was the 1957 City Charter. That governing document authorizes the City to "provide for and establish a fund or funds" for pensions, "provided, however, that retirement benefits established by any ordinance existing at the effective date of this Charter shall not be reduced, decreased or diminished." (City Charter, § 1100.) At the time of the adoption of the City Charter both of the ordinances dealing with CERS and FAPRS contained provisions entitled "benefits at retirement" which set forth the retirement benefits members of CERS and FAPRS were entitled to receive in 1957.

Second, the voters did not approve ordinance No. 5313 which was adopted by the City in 1958. Though that ordinance contained provisions establishing a new CERS and FAPRS and repealed the former ordinances, it also continued in effect the benefit provisions of prior ordinances. Both the "retirement systems" which were in effect in 1957 and those subsequently created provided for benefits other than "benefits at retirement," and these additional benefits were not approved by the voters. For example, "Death Benefits" are not included within the sections providing for "benefits at retirement." It must be kept in mind that in the 1957 charter vote the voters' approval was limited to "retirement benefits" and did not include all "retirement system costs" referred to in ordinance No. 83-116. Not only did ordinance No. 5313 include costs and benefits which were not part of retirement benefits, but the level of retirement benefits, at least in the case of CERS, has been considerably increased since 1957.

The key question is what did the voters intend to approve when they voted to adopt section 1100 of the City Charter. This involves interpreting the

City Charter provision. ■ First, it is noted that the rules of statutory construction are to be applied to charters. (*Castaneda* v. *Holcomb* (1981) 114 Cal.App.3d 939, 942 [170 Cal.Rptr. 875].)

■ A city "has all powers over municipal affairs, otherwise lawfully exercised, subject only to the clear and explicit limitations and restrictions contained in the charter." (*City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 598 [212 P.2d 894].) ■ The primal principle of statutory construction requires the ascertainment of the intent of the Legislature. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ■ Where, as here, there is no direct evidence of legislative intent, the court must turn to the words of the charter for the answer. (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

■ Once the legislative intent is ascertained, it is fundamental that the court's task is to effectuate the purpose of the law as found in that intent. (*Select Base Materials* v. *Board of Equal., supra,* 51 Cal.2d 640, 645.) The endeavor must be to produce a "reasonable result consistent with [the] legislative purpose . . . ." (*Kusior* v. *Silver* (1960) 54 Cal.2d 603, 620 [7 Cal.Rptr. 129, 354 P.2d 657]; *Friends of Mammoth* v. *Board of Supervisors, supra,* 8 Cal.3d 247, 259.) In this regard, we must keep in mind the preferential position of public pensions, they being governmental obligations of great importance. (*Carman* v. *Alvord, supra,* 31 Cal.3d 318, 325, fn. 4.)

■ Applying these precepts to the instant case, the first sentence of section 1100 in broad language authorized the City to create funds for pensions systems by ordinance. The sentence following this provision contains a proviso. The office of the proviso, "provided, however, that retirement benefits established by any ordinance existing at the effective date of this Charter shall not be reduced, decreased or diminished," is to explain, qualify or restrain the operation of the preceding provision. (*McAlpine* v. *Baumgartner* (1937) 10 Cal.2d 409, 417-418 [74 P.2d 753]; *Dupuy* v. *Board of Education* (1930) 106 Cal.App. 533, 538 [289 P. 689].) Webster's New World Dictionary defines "provided" as "on the condition or understanding; if (often with *that*)." (Webster's New World Dict. (2d college ed. 1970) p. 1144.) Black's Law Dictionary defines "provided" as: "The word used in introducing a proviso. . . . Ordinarily it signifies or expresses a condition; but this is not invariable, for, according to the context, it may import a covenant, or a limitation or qualification, or a restraint, modification, or *exception* to something which precedes." (Black's Law Dict. (5th ed. 1979) p. 1102, col. 1, italics added.) Therefore, in section 1100 the proviso operates as a limitation of the power described in the first sentence

by limiting the retirement benefits to the benefits established by ordinance as of the date of the adoption of section 1100. The proviso also operates in this instance as an exception to the power grant in the preceding provision by inferentially approving the "retirement benefits established by any ordinance existing at the effective date of this Charter." This inference is supported by the City Charter provision, which states in part: "All lawful ordinances, . . . or portions thereof, in force at the time this Charter takes effect, and not in conflict or inconsistent herewith, are hereby continued in force until the same shall have been duly repealed, amended, changed or superseded by proper authority." (Art. I, § 102, City Charter.) If the benefits cannot be "reduced, decreased or diminished," it is reasonable to conclude that those benefits were intended to be maintained at least at that level. Hereinafter these benefits may be referred to as the "level of retirement benefits" as of the date of the adoption of the City Charter.

We conclude that "level of retirement benefits" as of the date of the adoption of the City Charter by the voters should be construed to include all of the indebtednesses incurred by the City in maintaining the level of retirement benefits that existed under CERS and FAPRS in 1957 for all current and future employees.[3] That level would be based upon the "benefits at retirement" provided for in CERS and FAPRS in 1957 and excludes any additional benefits provided by ordinances in effect in 1957 or adopted subsequent to the adoption of the City Charter, including ordinance No. 5313 which was adopted in 1958.

The City now concedes that this is the proper interpretation of the charter.

■ Contrary to Taxpayers' contention, specific approval by the voters of each tax or specific pension system by name is not required, but rather approval of the indebtedness to fund the benefits is all that is needed. (*Valentine* v. *City of Oakland, supra,* 148 Cal.App.3d 139, 148-151.)

■ Taxpayers argue that section 1100 is too vague to enforce as the basis for establishing an indebtedness or tax.

■ The term "indebtedness" has been given a broad interpretation. Thus, in *Carman* v. *Alvord, supra,* 31 Cal.3d 318, 326, the Supreme Court

---

[3]Taxpayers argue that the prohibition against reduction of retirement benefits below the 1957 level should not be applied to employees hired after 1957. We prefer to believe that the intent of the people in enacting this charter provision was to prohibit reduction of the level of retirement benefits as of the date of the adoption of the City Charter as to all employees and not to create the absurd situation where there would be two classes of retirees, one whose retirement benefits can be reduced and one whose retirement benefits cannot be reduced. (See *Carman* v. *Alvord, supra,* 31 Cal.3d 318, 333, fn. 11.)

said: " 'The term "indebtedness" has no rigid or fixed meaning, but rather must be construed in every case in accord with its context.' (*County of Shasta* v. *County of Trinity* (1980) 106 Cal.App.3d 30, 38 [165 Cal.Rptr. 18]; see 42 C.J.S., Indebtedness, p. 555.) It can include all financial obligations arising from contract (see, e.g., § 23231, defining indebtedness in county boundary-change proceedings), and it encompasses 'obligations which are yet to become due as [well as] those which are already matured.' (*Provident etc. Assn.* v. *Davis* (1904) 143 Cal. 253, 255 [76 P. 1034].) We hold that indebtedness as traditionally understood covers obligations arising under City's pension plan."

 Taxpayers point out that the ordinances in existence in 1957 did not define the term "retirement benefits." Because the ordinances did define "annuity," "pension," "retirement," and "retirement allowance," Taxpayers argue that it is unclear just what the voters approved. Due to this uncertainty, Taxpayers argue that section 1100 is too vague to construe as an authorization by the voters of an indebtedness.

Although the term "retirement benefits" is not defined by the "definitions" sections of the ordinances involved, both ordinances contain separate sections which describe "Benefits at Retirement." These sections specify, by reference to other sections within the ordinances, what benefits a person was entitled to receive upon retirement. These provisions are very specific and adequately set forth the "retirement benefits" a person was entitled to receive in 1957. Therefore, Taxpayers' challenge to section 1100 as being vague must fail.

Because under Proposition 13 a property tax which exceeds 1 percent must be approved by the voters, a tax based upon voter approval of section 1100 of the City Charter must be limited in scope to paying the indebtedness incurred by the City in maintaining "retirement benefits" at their 1957 level. The imposition of a tax to fund more than "retirement benefits" at their 1957 level would be beyond the scope of the indebtedness approved by the voters and therefore in violation of Proposition 13.

The tax imposed by ordinance No. 83-116 is a tax to meet part of the City's financial obligation "for retirement system costs." There is nothing in ordinance No. 83-116 or its preamble, however, which would indicate that the tax was intended to be limited to paying the City's obligation to fund retirement benefits at their 1957 level. Rather, by the ordinance the city council attempted to raise property taxes to fund its obligation to FAPRS and CERS to meet retirement systems costs *in general* without restricting the purpose of the tax to funding the level of retirement benefits that existed in 1957. Because the only indebtedness approved by the voters

was the obligation to maintain retirement benefit at the 1957 level, and ordinance No. 83-116 purports to raise taxes to pay the City's obligation to its retirement systems in general, ordinance No. 83-116 exceeds the scope of indebtedness approved by the voters.[4]

Under the facts of this case, however, this construction does not compel a determination that the ordinance must fail. We see no legal or constitutional barrier to upholding the tax to the extent it will be expended for a legal purpose, that is, for the voter-approved retirement benefits at the 1957 level. The cost of maintaining retirement benefits at their 1957 level was approved by the voters and is part of the cost of the retirement systems in general. The tax proceeds will only be used to pay that portion of the retirement systems costs which were approved by the voters prior to 1978, and are therefore constitutionally subject to being funded by an additional tax.

There is precedent for this position. (*Valentine* v. *City of Oakland, supra,* 148 Cal.App.3d 139; *Kern County Water Agency* v. *Board of Supervisors* (1979) 96 Cal.App.3d 874 [158 Cal.Rptr. 430].)

In the *Valentine* case, the City of Oakland had three retirement funds, Oakland Municipal Employees Retirement System (OMERS), Police and Fire Retirement Systems (PAFRS) and the Public Employees Retirement System (PERS). The funding of OMERS and PAFRS had been approved by the voters before the passage of Proposition 13. PERS was not approved prior to the passage of Proposition 13. The city levied a property tax override of 0.1530 percent for the "1981 pension liability fund," the proceeds of which were to be used to fund all three systems without segregation. The court upheld the validity of the tax as to OMERS and PAFRS but invalidated that part of the tax to be used for PERS, concluding "We conclude that the 0.1530 percent tax levied by the City through Resolution No. 59916 CMS is valid as exempt under section 1, subdivision (b), of article XIII A of the California Constitution from the property tax limitation of section 1, subdivision (a), to the extent that such tax will go to fund the City's 1981-1982 fiscal year obligations to OMERS and PAFRS, systems which were approved by the voters prior to the effective date of article XIII A. Because we further conclude that PERS was not voter-approved within the meaning of the subdivision (b) exemption, the tax levy is invalid insofar as it funds

---

[4]We point out, however, that the problem is with the overbreadth of ordinance No. 83-116 and not the lack of power to tax. Because the voters did approve an indebtedness that is narrower in scope (retirement benefits at their 1957 level) than the indebtedness ordinance No. 83-116 purports to fund, the City has the power to impose a tax to fund that indebtedness.

obligations arising under PERS." (*Valentine* v. *City of Oakland, supra,* 148 Cal.App.3d 139, 154-155.)

Similarly, in the *Kern County Water Agency* case, the court upheld that part of a property tax that was levied for a legal purpose and invalidated the balance. In that case, the Kern County Water Agency (Agency) contracted with the State of California to deliver water to the Agency. The contract was approved by the voters before Proposition 13 was adopted and authorized the Agency to assess a property tax to raise sufficient funds to meet its obligation under the contract in those years when the obligation could not be met by revenues from the sale of water by the Agency to the water districts within the Agency.

For the fiscal year 1978-1979 the Agency assessed such a tax to raise $4,693,290. Included within the amount to be raised was $52,536 to meet some maintenance and operations costs of levees constructed or repaired by the United States Army Corps of Engineers which was not in the Agency contract with the state that had been approved by the voters. The court had no hesitancy in invalidating the tax insofar as it assessed amounts necessary to meet the $52,536 obligation and otherwise validated the tax.

Accordingly, we hold that the tax levied by ordinance No. 83-116 is valid to the extent the proceeds of the tax will be used to fund the level of retirement benefits in existence at the time the voters adopted the charter.

It must be emphasized that we are not amending ordinance No. 83-116 by inserting or omitting words in the ordinance or changing the wording of the ordinance or reading into the ordinance an intent contrary to the wording and intent of the original ordinance. In this regard we reject consideration of ordinance No. 84-4 passed by the City on January 10, 1984, after the cause was submitted to the trial judge for decision. The City passed the ordinance for the purpose of declaring that the tax override was intended to be limited in purpose to paying the City's pension obligation for retirement benefits at the level that existed in 1957. The ordinance stated that it "is declaratory of, and does not constitute a change in, existing law . . . ." The ordinance recites, "WHEREAS, the Council intended at the time it adopted Ordinance No. 83-116, and still intends to be bound by such limitation, and for that reason hereby incorporates same within the text of said ordinance as a restatement, for the purpose of clarification only, of the law as it existed from and after the date of the adoption thereof."

However, upon analysis, it is clear to us that ordinance No. 84-4 limits the purpose of and is intended to amend ordinance No. 83-116 and was not

in fact declaratory of the intent of the City at the time ordinance No. 83-116 was originally passed.

For example, in *Lawrence* v. *City of Concord* (1958) 156 Cal.App.2d 531 [320 P.2d 215], the court was confronted with a similar situation. The court rejected the contention, stating: "Appellants argue that by this provision the Legislature is 'spelling out in 1955 what it meant to convey in 1953,' and that this legislative construction of the 1953 statute is binding upon us. But the rule is to the contrary. '[T]he court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms.' (*California Emp. etc. Com.* v. *Payne*, 31 Cal.2d 210, 214 [187 P.2d 702].)" (*Id.*, at p. 534.) (See also, *Cal. Emp. Stab. Com.* v. *Chichester etc. Co.* (1946) 75 Cal.App.2d 899, 901-902 [187 P.2d 702]; *Gallichotte* v. *California etc. Assn.* (1937) 23 Cal.App.2d 570, 580 [74 P.2d 73].)

Accordingly, we have interpreted ordinance No. 83-116 as it existed before the substantive amendment contained in ordinance No. 84-4.

In light of our decision that the City is authorized to use the proceeds of the tax for retirement benefits as they existed in 1957, we need not reach the City's contention that if the ordinance is held invalid, then Proposition 13 violates the United States constitutional provision against the impairment of contracts[5] and must be struck down.

Because the record is unclear as to whether the entire proceeds of the tax are necessary to fund the level of retirement benefits as of the date of the adoption of the City Charter, there remains an issue of fact to be resolved by the trial court at the trial. For this reason we only direct a partial summary judgment in favor of the City.

Lastly, we observe that Taxpayers have for the first time in this court indulged in a great deal of rhetoric regarding alleged misrepresentations involving the financial condition of the City and the need for the tax which, Taxpayers contend, should preclude this court from considering the City's petition. These considerations are irrelevant to the resolution of the basic legal issues involved. These complaints should be handled politically. "Courts ought not to enter this political thicket." (*Colegrove* v. *Green* (1946) 328 U.S. 549, 556 [90 L.Ed 1432, 1436, 66 S.Ct. 1198] (opn. by Frankfurter, J.).) We decline to do so.

---

[5]Article I, section 10, clause 1 of the United States Constitution provides in pertinent part: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."

Let a writ of mandate issue directing the Superior Court of Fresno County in action No. 300260-7 to set aside its summary judgment in favor of Taxpayers and order denying summary judgment in favor of the City, and to enter a partial summary judgment in favor of the City upholding the tax to the extent the proceeds thereof are to be utilized to meet the City's obligation to maintain retirement benefits at the level that existed under the CERS and FAPRS as of the date of the approval of the 1957 City Charter for all present and future employees.

Franson, J., and Hamlin, J., concurred.

A petition for a rehearing was denied June 7, 1984, and the petition of real parties in interest for a hearing by the Supreme Court was denied July 11, 1984.